IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MELORA G.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

    Defendant.

Civ. No. 3:20-cv-00765-CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

Plaintiff Melora G. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for social security disability insurance benefits. For the reasons provided below, the Commissioner's decision is AFFIRMED.

**BACKGROUND**

Plaintiff is a 47-year-old woman with at least a high school education. She alleges inability to sustain fulltime work activity because of traumatic brain injury, vision and balance problems, nystagmus, esophoria, vertigo, peripheral vision problems, memory problems, focusing problems, fatigue, and anxiety.

On July 24, 2017 Plaintiff filed a Title II application for disability and disability insurance benefits, alleging disability beginning March 14, 2016. Plaintiff's claim for disability

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

1 - Opinion and Order

was denied initially and upon reconsideration. Plaintiff requested a hearing and appeared by video before an Administrative Law Judge ("ALJ") on April 11, 2019. Tr. 118. The ALJ issued an unfavorable decision on May 8, 2019. Tr. 139. The ALJ concluded Plaintiff was unable to perform any past relevant work, but she was capable of performing other work that exists in significant numbers the national economy, such as agricultural sorter, bottling line attendant, and poultry dresser. Tr. 138. On March 12, 2020, the Appeals Council denied review, making the ALJ's decision the final agency decision. Tr. 4. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20

    C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

  a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

See also Bustamante v. Massanari, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work

3 - Opinion and Order

which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021. Tr. 120

2. Plaintiff has not engaged in substantial gainful activity since March 14, 2016, the alleged onset date. Tr. 120.

3. Plaintiff has the following severe impairments: history of multiple car accidents/post-concussion syndrome, myofascial pain, bilateral sacroiliac joint degenerative joint disease, affective disorder, anxiety disorder, and visual disturbance/ esotropia/ convergence excess/ dizziness. Tr. 120.

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 121.

5. Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She should avoid even moderate exposure to work hazards, such as moving machinery and unprotected heights. She can perform simple, routine tasks. She is limited to occasional and superficial interaction with the general public and coworkers. She can perform work involving only occasional changes in the work routine and setting. She can perform work that can be learned by demonstration with minimal reading required. Tr. 125.

6. Plaintiff is unable to perform any past relevant work. Tr. 137.

7. Plaintiff was born on August 19, 1971 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. Tr. 137.

8. Plaintiff has at least a high school education and is able to communicate in English. Tr. 137.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferable job skills. Tr. 137.

10. Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 137.

11. Plaintiff has not been under a disability, as defined in the Social Security Act, from March 14, 2016, through the date of this decision. Tr. 139.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner, this Court must review the decision of the Appeals Council to determine whether that decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). Where the evidence before the ALJ or Appeals Council is subject to more than one rational

interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's subjective symptom testimony.
2. Whether the ALJ properly evaluated the medical opinions of Wendy Neal, D.O., N.D., and Julie Allen, M.S.
3. Whether the RFC was supported by substantial evidence.

For the following reasons, the Court finds that the ALJ properly evaluated the evidence. The RFC is supported by substantial evidence. The decision of the Commissioner is affirmed.

6 - Opinion and Order

I.  **The ALJ properly evaluated Plaintiff's subjective symptom testimony; he gave clear and convincing reasons to discount the severity of her symptoms and his conclusions are supported by substantial evidence.**

Plaintiff challenges the ALJ's treatment of her testimony regarding her limitations and severity of her symptoms. When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. *Id.*

In the second stage of the analysis, the ALJ must consider the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record. SSR 16-3p at *7-8. The ALJ will consider the "[l]ocation, duration, frequency, and intensity of pain or other symptoms" reported by the claimant, any medical sources, and any non-medical sources. *Id.* The ALJ's decision must contain "specific reasons for the weight given to the individual's symptoms, be consistent with and support by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* Additionally, the evidence upon which the ALJ relies must be substantial. *See Holohan v. Massinari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991). In rejecting claimant's testimony about the severity of her symptoms, the ALJ must give "specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).

Here, Plaintiff's core argument, which applies to the other issues presented as well, is that the ALJ, and now the Commissioner, do not fully understand the nature of Plaintiff's visual impairments or limitations. Plaintiff asserts that the problem is not merely that she cannot read or cannot understand written or visual information, but that her visual impairments make reading and processing written or visual information extremely difficult and fatiguing, such that, while intellectually she can read or process information for a short period of time, she becomes tired, stressed, fatigued, and must stop.

The Court understands the distinction that Plaintiff makes here but disagrees about the ALJ's level of understanding. The ALJ comprehensively reviewed Plaintiff's subjective symptoms, including her visual disturbances and challenges, difficulty processing, her mental stress and fatigue, and all the other related symptoms. Tr. 130. The ALJ also reviewed the medical documentation regarding these complaints. *Id.*; tr. 134. The ALJ properly weighed this evidence along with the record as whole, including the fact that Plaintiff had been prescribed reading glasses in 2014, but did not use them for several years after that. Tr. 130. "With these reading glasses, near point focus is improved. She is able to read and doing [sic] near tasks." *Id.* Similarly, as noted by Dr. Stone, while Plaintiff's functional visual skills are significantly reduced and thus the information relayed to the brain for visual processing is not consistent, nor reliable, she had recently been actively participating in an optometric vision therapy program to help rehabilitate functional visual skills. Tr. 134. "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9thCir. 2017). Thus, the ALJ properly considered whether treatments were successful in relieving some of the symptoms alleged by Plaintiff. The ALJ did not err by failing to understand the full extent of Plaintiff's symptoms.

Plaintiff raises other specific issues with the ALJ's interpretation of the evidence such as the circumstances surrounding Plaintiff's work at RECODE, her ability to manage her bank accounts, her social life with friends and boyfriends, her ability to use computers and other technology, and her fluctuating cognitive symptoms. The Court finds that the ALJ exhaustively reviewed this all of this evidence, and while Plaintiff may disagree with the ALJ's ultimate conclusions about the evidence, the ALJ's interpretation and conclusions are not unreasonable as a matter of law. The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Here, Plaintiff's interpretation of the evidence is reasonable, but so is the ALJ's interpretation. The ALJ gave clear and convincing reasons, and substantial evidence supports the ALJ's assessment regarding Plaintiff's subjective symptom testimony.

## II.     ALJ properly evaluated the medical opinions of Wendy Neal, D.O., N.D., and Julie Allen, M.S.

Under prior Social Security regulations, a hierarchy of medical opinions dictated the weight that must be given by an ALJ: treating doctors were generally given the most weight and non-examining doctors were generally given the least weight. *See* 20 C.F.R. §§ 404.1527, 416.927 (1991); 56 Fed. Reg. 36,932 (Aug. 1, 1991). For applications filed on or after March 27, 2017, the new regulations eliminate the old hierarchy of medical opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). Plaintiff filed an application for disability insurance benefits on July 24, 2017. Thus, the Commissioner's new regulations apply to the ALJ's assessment of this opinion. *See* 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844 (Jan. 18, 2017*); see also* 82 Fed. Reg. 15,132 (Mar. 27, 2017) (correcting technical errors).

The new rules no longer provide for any inherent weight: "We [the SSA] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or

9 - Opinion and Order

prior administrative medical finding(s) including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The SSA "considers" various medical opinions for claims filed on or after March 27, 2017, and determines which medical opinions are most persuasive. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In evaluating which opinions are most persuasive, the ALJ considers several factors. The two most important factors are supportability & consistency. *Id.* Secondary factors include the relationship with the claimant, specialization, and other factors. *Id.* at 404.1520c(c), 416.920c(c).

### A. Dr. Neal

Wendy Neal, D.O., drafted a short letter in April 2019. Tr. 1339-1340. The letter outlined Plaintiff's allegations, some physical examination findings and concluded she had "ongoing cognitive and sensory issues" limiting interaction and functioning. Tr. 1339. Dr. Neal concluded Plaintiff was disabled and "cannot function in regular work." Tr. 1340. The ALJ determined that Dr. Neal's letter was inconsistent with the record, lacked supportability, and was too reliant on Plaintiff's allegations; these considerations appropriately determine the supportability and consistency of the opinion. The ALJ did not err by finding the letter less persuasive than other evidence in the record.

The consistency of a medical opinion with the record as a whole is one of the two most important factors under the new regulations. 20 C.F.R. § 404.1520c(c)(2). Here, the ALJ noted Dr. Neal offers the vague conclusion that Plaintiff is limited in interaction and functioning "in regular work". Tr. 135, 1339. However, the ALJ stated this conclusion is not consistent with available neuropsychological examination findings. Tr. 135. Haley Trontel, Ph.D., completed such an evaluation in July 2017, at which Plaintiff demonstrated generally unremarkable findings, including normal thought process, intact memory, intact organization skill, low-average

recognition, average cognitive flexibility, good attention to detail, normal gait and normal motor function. Tr. 128, 597-600. Abundant additional objective evidence exists showing normal physical findings in gait, station, strength, and only mild sacroiliac degeneration Tr. 471, 511, 563, 599, 615, 708, 714, 816, 829, 835, 839, 843, 847, 851, 1108, 1262, 1303, 1306. In contrast to Dr. Neal's conclusions, the record demonstrates Plaintiff has reasonably normal findings in interactive functioning, as she maintains a romantic relationship, is described as pleasant by providers, uses public transportation for trips as long as one hour, and enjoys interactions with others. Tr. 270, 435, 599, 602, 606, 610, 615, 618, 708, 709, 718, 816, 817, 829, 1064, 1069, 1300, 1302, 1305, 1312, 1316, 1322.

Heavy reliance on Plaintiff's subjective allegations provided an additional reason cited by the ALJ in discounting Dr. Neal's opinion. Tr. 135. The ALJ noted that Plaintiff's allegations include symptom exaggeration and conflicting statements regarding her functionality. Tr. 135. Providers have described her allegations as "dramatic" on multiple occasions. Tr. 716, 816. Further, she has provided contradictory information regarding alleged limitations, including in concentration, interaction, ability to read, use of computers and technology, and physical abilities. See Tr. 598, 614, 718, 773, 813, 828, 838, 842, 847, 850, 873, 917, 921, 1009, 1189. Thus, the ALJ reasonably considered that Dr. Neal's heavy reliance on Plaintiff's unreliable allegations made her letter less persuasive.

### B. Ms. Allen

Ms. Julie Allen, M.S., completed a "Physical Capacity Statement" in April 2019. Tr. 1344-1348. She concluded that Plaintiff was incapable of lifting or carrying more than ten pounds, was generally limited to occasional postural and manipulative activities, could sit up to four hours and stand up to two hours in an eight-hour workday, and would require the allowance

to elevate her legs approximately one-half of the day. Tr. 1344-1346. She concluded that Plaintiff would require two to four additional breaks of 30 minutes per workday, would have more than three impairment-related absences per month, and must avoid environments with excessive visual and auditory stimulation. Tr. 1344-1346. The form of the Statement was generated by an attorney, and although it was completed entirely by Ms. Allen, Dr. Neal signed the form, indicating she agreed with Ms. Allen's conclusions.

The ALJ was not persuaded by Ms. Allen's conclusions, citing lack of consistency with the evidence of record. Tr. 136. The consistency of a medical opinion with the record as a whole, including evidence from other medical sources, is one of the two most important factors under the new regulations. 20 C.F.R. § 404.1520c(c)(2). In this case, Ms. Allen provides a limitation to carrying no more than ten pounds at one time. Tr. 1346. The ALJ points out Plaintiff's habit of not carrying items when she walks is not backed by medical evidence in support, and is simply a choice made unilaterally by Plaintiff. Tr. 136, 716. Further, this assigned limitation to carrying ten pounds or less is not consistent with Plaintiff's admission elsewhere in the record she is able to carry objects, and only had difficult carrying "heavy" objects. Tr. 1095. Moreover, the ALJ references inconsistency of this opinion with State agency consultant opinions, which he found more persuasive due to supportability factors. Tr. 136.

Ms. Allen did not provide support for the conclusions drawn, providing another reason to discount her opinion. Tr. 136. Supportability is the other of the two most important factors under the new regulations. 20 C.F.R. § 404.1520c(c)(1). The ALJ points out several examples of conclusions that lack support. Tr. 136. Ms. Allen concluded Plaintiff could walk no more than two blocks, she but did not provide associated analysis or explanation. Tr. 136, 1344. Similarly, the indication Plaintiff needs to elevate her legs nearly half of each workday was not

accompanied by justification, nor was the restriction to lifting or carrying no more than ten pounds. Tr. 136, 1344-1345. The ALJ thus reasonably found that Ms. Allen's Statement was not persuasive due to lack of consistency and lack of supportability.

### III. The RFC is supported by substantial evidence.

The ALJ reasonably assessed Plaintiff's residual functional capacity. Tr. 118-139. A residual functional capacity represents "the most [a person] can still do despite [that person's] limitations," and is assessed based on all relevant evidence in the case record. 20 C.F.R. § 404.1545; SSR 96-8p, available at 1996 WL 374184, at 1. Determining the claimant's residual functional capacity is the ALJ's responsibility. 20 C.F.R. § 404.1546(c). The ALJ must consider the whole record and weigh the medical and testimonial evidence. SSR 96-8p at 1. The Court affirms the ALJ's determination of the residual functional capacity if the ALJ applied the proper legal standards and the decision is supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Here, substantial evidence supported the residual functional capacity finding, and the ALJ did not err in applying any legal standards. The ALJ determined that Plaintiff had various mental and physical impairments that significantly affected her ability to work, including postconcussion syndrome, myofascial pain, bilateral sacroiliac degenerative joint disease, affective disorder, anxiety disorder, and visual disturbance/esotropia/convergence disorder Tr. 120. The ALJ found these impairments limited Plaintiff to light work except she could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, and could never climb ladders ropes and scaffolds. Tr. 125. Additionally, the ALJ determined Plaintiff should avoid even moderate exposure to work hazards, could perform simple, routine tasks, was limited to occasional and superficial interaction with the general public and coworkers, could handle

only occasional changes in the work routine and setting, and could perform work that could be learned by demonstration, and work with minimal reading required. Tr. 125.

Plaintiff argues the ALJ erred by not including additional visual limitations. She stated the assigned residual functional capacity contains no "limitation of visual tasks beyond reading." However, while a limitation to minimal reading is the primary visual limitation assigned, the assigned limitations in balancing and exposure to hazards are also related to her vision impairment. Tr. 125, 134. Further, Dr. Stone's opinion did not include a recommended specific visual limitation, so the ALJ's assigned capacity did not "leave out" limitations offered by Dr. Stone, as alleged by Plaintiff. Instead, armed with Dr. Stone's statement that visual processing is often inconsistent and unreliable, and Plaintiff's frequent assertion that she is very limited in her ability to read, the ALJ properly assigned a limitation to "minimal reading" as well as tasks learned by demonstration. Tr. 125.

Plaintiff also argues that extra work breaks should have been included in the RFC based on Dr. Stone's report. However, the limitation in reading partially accounts for processing difficulties and resulting fatigue. Dr. Stone indicated vision therapy has slowly improved Plaintiff's visual skills, and this therapy is expected to decrease fatigue from visual tasks. Tr. 822. Additionally, limitation in work complexity accounts for reduction in attention and cognition. Moreover, nothing in Dr. Stone's opinion can be fairly characterized as a statement that additional breaks are necessary, and Plaintiff's own reports indicate she is able to use a computer for up to two hours at one time. Tr. 1041.

The ALJ properly considered the evidence of record, including multiple medical opinions. The RFC adequately accounted for established impairments and incorporated persuasive opinion evidence, including Dr. Stone's opinion. The ALJ's decision is affirmed.

## ORDER

The ALJ properly evaluated the evidence, and the RFC is supported by substantial evidence. The final decision of the Commissioner is affirmed.

It is so ORDERED and DATED this 28 day of February, 2022.

_____
MARK D. CLARKE
United States Magistrate Judge